No. 22-10309, 22-10310

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT MANNING AND JAMARE COATS,

Defendants-Appellants.

_____

## UNITED STATES' RESPONSE TO COATS'S SEPARATE PETITION FOR PANEL REHEARING AND REHEARING EN BANC

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 3:19-cr-00313-WHA
_____

**CRAIG H. MISSAKIAN**
United States Attorney

**MERRY JEAN CHAN**
Chief, Appellate Section, Criminal Division

**ANNE C. HSIEH**
Assistant United States Attorney
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 203-8578

**Attorneys for Plaintiff-Appellee**
**UNITED STATES OF AMERICA**

March 5, 2026

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF THE CASE ............................................................................... 2

    A.    Coats's conviction for VICAR murder ...................................................... 2

    B.    Coats's appeal and panel decision ........................................................... 2

ARGUMENT ........................................................................................................ 4

    I.    REHEARING IS NOT WARRANTED .............................................. 4

    A.    Standard for rehearing............................................................................ 4

    B.    The panel correctly found the evidence sufficient to show that Coats acted with a VICAR purpose ................................................................... 5

    C.    The panel decision does not conflict with the other circuit decisions cited by Coats...................................................................................... 10

        1.    Garcia ............................................................................................ 12

        2.    Ledbetter ....................................................................................... 15

        3.    Thai ............................................................................................... 16

CONCLUSION................................................................................................... 18

CERTIFICATE OF COMPLIANCE ................................................................... 20

## TABLE OF AUTHORITIES

### Federal Cases

*Jackson v. Virginia*, 443 U.S. 307 (1979) ............................................................ 6, 7

*United States v. Banks*, 514 F.3d 959 (9th Cir. 2008) ................................. 4, 6, 7, 8

*United States v. Bennett*, 621 F.3d 1131 (9th Cir. 2010) ........................................ 6

*United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) ................................... 7

*United States v. Garcia*, 74 F.4th 1073 (10th Cir. 2023) .............. 10, 11, 12, 13, 14

*United States v. Harris*, 792 F.2d 866 (9th Cir. 1986) ......................................... 11

*United States v. Ledbetter*, 929 F.3d 338 (6th Cir. 2019) .................. 10, 15, 16, 17

*United States v. Manning*, 151 F.4th 1144 (9th Cir. 2025) .................................... 3

*United States v. Manning & Coats,* Nos. 22-10309, 2025 WL 2408915
　(9th Cir. Aug. 20, 2025) ............................................................. 3, 4, 10

*United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (en banc) .......................... 6

*United States v. Pimentel*, 346 F.3d 285 (2d Cir. 2003) ..................................... 6, 7

*United States v. Terry*, 911 F.2d 272 (9th Cir. 1990) ............................................. 6

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) .............................. 10, 11, 17, 18

### Federal Statutes

18 U.S.C. § 1959 ................................................................................................. 1, 7

### Federal Rules

Fed. 40 ................................................................................................................ 4, 5

Nos. 22-10309, 22-10310

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

        v.

ROBERT MANNING, AND
JAMARE COATS,

     Defendants-Appellants.

_____

**UNITED STATES' RESPONSE TO COATS'S SEPARATE PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

In his separate petition for panel rehearing and/or rehearing en banc, Defendant-Appellant Jamare Coats challenges only the panel's ruling on the evidentiary sufficiency of his conviction for murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Violent Crimes in Aid of Racketeering Act, or VICAR).  Dkt. 86.[1]  Coats claims that the panel's decision "conflicts with the reasoned authoritative decisions of other circuits," citing again the same extra-

_____

[1]  Dkt. refers to the Court's docket for these consolidated appeals; PFR refers to Coats's petition for rehearing, Dkt. 86; ER to the excerpts of records; Exh. to the trial exhibits transmitted to the Court, Dkts. 47, 49, to transmit; COB to Coats's Opening Brief, Dkt. 23; AAB to Appellee's Answering Brief, Dkt. 43; ARB to Coats's Reply Brief, Dkt. 61.

circuit decisions that he previously raised in his opening brief, which this panel already considered in rejecting his claim.

Coats is wrong. The panel's unpublished affirmance creates no circuit conflict. The out-of-circuit cases cited by Coats—to the extent they hold any persuasive authority—are sufficiently distinguishable, particularly on such a fact-intensive, case-specific issue like evidentiary sufficiency. Rehearing is not warranted, and this Court should deny Coats' petition.

## STATEMENT OF THE CASE

### A. Coats's conviction for VICAR murder

In August 2022, a federal jury convicted Coats and his codefendant, Robert Manning, each of one count of murder in aid of racketeering and one count of being a felon in possession of a firearm. The convictions stemmed, in sum, from the defendants' shooting and murder of Misterdee Simmons, an individual who disrespected them and fellow Mac Block members at a public gathering in Mac Block territory. The trial evidence was discussed at length in the government's answering brief and the panel's decisions in this appeal and will not be reiterated in detail here, except as incorporated in the argument below. After trial, both Coats and Manning were sentenced to life imprisonment.

### B. Coats's appeal and panel decision

On appeal, Coats and Manning raised multiple claims, including evidentiary

2

sufficiency challenges to their VICAR murder convictions, and in particular, the VICAR purpose element.

The panel affirmed the convictions in a published decision and accompanying memorandum disposition. *See United States v. Manning*, 151 F.4th 1144 (9th Cir. 2025); *United States v. Manning & Coats*, Nos. 22-10309, 22-10310, 2025 WL 2408915, at *1 (9th Cir. Aug. 20, 2025). The published opinion addressed the appellants' bifurcation and *Batson* claims, with Judge Berzon dissenting only on the bifurcation issue. *Manning*, 151 F.4th at 1164.

In its memorandum disposition, the panel addressed the appellants' "remaining arguments" and unanimously affirmed. *Manning & Coats*, 2025 WL 2408915 at *1. With regard to the evidentiary sufficiency of the VICAR convictions, the panel first found that the evidence was sufficient to prove that Mac Block was a racketeering enterprise because the "testimony at trial regarding Mac Block's activities and practices could lead a rational juror to find that Mac Block was an associated-in-fact enterprise with a common purpose of representing their area and committing crimes in and around the Fillmore District." *Id*. at *3. The panel also found the evidence sufficient to support "the jury's finding that Manning and Coats acted with a VICAR purpose." *Id*. at *4. Based on the evidence, "a reasonable juror could find that Harrison returned to the funeral reception with a gun to maintain his reputation with Manning and other Mac Block

3

members," and "could likewise find that Manning was reacting to Simmons's disrespect of Mac Block members in or around Mac Block territory." *Id*. at *5. Similarly, "Coats's actions, including arming himself and returning to confront Simmons, could lead a reasonable juror to infer that Coats sought to maintain his status in Mac Block by responding to Simmons's disrespect." *Id*. at *6 (citing *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008), for the proposition that to prove VICAR purpose, the "gang or racketeering enterprise purpose does not have to be the only purpose or the main purpose of the murder or assault. But it does have to be a substantial purpose.").

## ARGUMENT

## I.    REHEARING IS NOT WARRANTED

### A.    Standard for rehearing

Federal Rule of Appellate Procedure 40 permits a party to seek rehearing of a decision by the panel, the court en banc, or both. *See* Fed. R. App. P. 40(a). A petition for panel rehearing must "state with particularly each point of law or fact that the petitioner believes the court has overlooked or misapprehended." Fed. R. App. P. 40(b)(1)(A). "Panel rehearing is the ordinary means of reconsidering a panel decision," and "rehearing en banc is not favored." Fed. R. App. P. 40(a). Indeed, en banc rehearing "ordinarily will be allowed only if one of" the following criteria are met:

(A) the panel decision conflicts with a decision of the court to which the petition is addressed (with citation to the conflicting case or cases) and the full court's consideration is therefore necessary to secure or maintain uniformity of the court's decisions;

(B) the panel decision conflicts with a decision of the United States Supreme Court (with citation to the conflicting case or cases);

(C) the panel decision conflicts with an authoritative decision of another United States court of appeals (with citation to the conflicting case or cases); or

(D) the proceeding involves one or more questions of exceptional importance, each concisely stated.

Fed. R. App. P. 40(b)(2), (c).

Rehearing on Coats's evidentiary sufficiency claim—whether by the panel or the en banc court—is not warranted here because Coats fails to show either (1) that any point of law or fact was overlooked or misapprehended by the panel in rejecting his claim; or (2) that the panel's decision conflicts with "an authoritative decision of another United States court of appeals" (or evokes any other basis for en banc review).

### B. The panel correctly found the evidence sufficient to show that Coats acted with a VICAR purpose

The panel's holding that a reasonable juror could "infer that Coats sought to maintain his status in Mac Block by responding to Simmons's disrespect" was legally and factually sound, particularly given the "highly deferential" standard of

review for evidentiary sufficiency. *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990).

As an initial matter, Coats does not point out any legal error in the panel's decision, such as contesting the applicable standard that governs evidentiary sufficiency review. *See* PFR-2. "A claim of insufficient evidence fails if 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Bennett*, 621 F.3d 1131, 1135 (9th Cir. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *accord United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).

Nor does Coats contend that the panel applied an incorrect definition for the "purpose element" of a VICAR offense, *see* PFR-6, which is "met if 'the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.'" *Banks*, 514 F.3d at 965 (9th Cir. 2008) (citation omitted). Where there are mixed motives, "the gang or racketeering enterprise purpose does not have to be the only purpose or the main purpose of the murder or assault," though "it does have to be a substantial purpose." *Id.* at 969–70. To establish a defendant's enterprise purpose, the government need not prove "formal recognition by an organization's hierarchy" or

that the "defendants . . . acted with the purpose of enhancing their position 'in the eyes of the enterprise itself'; rather, it [is] sufficient that the motivation was to do so in the eyes of 'individuals or factions within the enterprise.'" *Id*. at 970 (citation omitted). The "evidence is sufficient for a VICAR conviction even if, for example, the jury could reasonably infer no more than that [the defendant] acted out of concern for his status in the eyes of his 'little homies' within the gang, or his reputation among other gang members generally." *Id*.

The panel correctly applied the *Jackson* standard and this Court's precedent on the VICAR "purpose element" in finding that the evidence was sufficient to support a rational juror's inference that Coats's involvement in the shooting of Simmons was substantially motivated by "the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a); *see Banks*, 514 F.3d at 972 ("Given the evidence regarding the expectations that the Rolling 60s held toward its members, the importance of maintaining one's status by responding with violence to perceived slights, Banks's own concerns with not appearing weak, his use of gang members to pursue Gilmore, and his prior attack on Lindsey, a properly instructed jury could reasonably have inferred that one of Banks's general purposes was to maintain his position in the Rolling 60s."). Specifically, the evidence at trial supported the jury's findings that (1) Coats was a Mac Block member who understood the

importance to his reputation of backing his fellow gang members and responding to disrespect, and (2) Coats' actions surrounding the gunfight were motivated, at least in substantial part, by the expectation and desire to respond to Simmons's disrespect and its corresponding impact on his standing in Mac Block.

First, there was ample evidence for a rational jury to find that Coats was a member of Mac Block who understood and valued the role of respect as a Mac Block member. Harrison testified that he, Manning, and Coats all claimed Mac Block or "represented the SWISS." 4-ER-621, 4-ER-690, 4-ER-694. Harrison had known Coats for a little over ten years, during which he occasionally saw Coats in Mac Block territory, including observing Coats possess firearms in Mac Block territory (at his "waistline") more than once. 4-ER-692–94. Harrison testified that he considered Coats to be "in the beef" because Coats had been shot "multiple times." 4-ER-695–96. Coats also used Mac Block terms and made Mac Block hand signs, as evidenced by both Harrison's testimony, 4-ER-694, and Coats's social media posts. *See, e.g.*, 13-ER-3258, 13-ER-3262. Some of the enterprise acts evidence—particularly, of Coats's and Manning's February 2013 high-speed chase, and Coats's August 2015 shooting on Fulton Street before returning to Prince Hall—also showed Coats's long-time affiliation with Mac Block and his understanding of the enterprise's expectations to respond to disrespect with

violence. *See* 8-ER-1979; 9-ER-2020–30, 9-ER-2046–55, 9-ER-2074, 9-ER-2095,
9-ER-2235–37, 9-ER-2281–86; 10-ER-2302–03, 10-ER-2458; 13-ER-3286–87.

Second, the evidence of Coats's actions in the confrontation with Simmons,
up to the gunfight and its aftermath, was sufficient for a jury to find that Coats had
a VICAR purpose in shooting Simmons. Coats, along with the other Mac Block
members backing Armstrong in the initial confrontation with Simmons, suffered
the same disrespect from Simmons. 4-ER-765; 6-ER-1368. And the direct video
footage of Coats, Manning, and Harrison's immediate and coordinated response to
this disrespect—specifically, running to Mac Block territory to retrieve firearms
and return directly to confront Simmons—was powerful evidence of their
enterprise purpose. *See* Exh. 47 (20:29:59–20:30:10); Exh. 55 (4:03–4:38); Exh.
56 (4:45–5:49). As the panel correctly concluded, a rational jury could infer from
these facts that, based on his actions, Coats shared an understanding and intent
with Harrison and Manning to retrieve their weapons and engage in violence
against Simmons in retaliation for his public disrespect towards them in Mac Block
territory. *See Manning & Coats*, 2025 WL 2408915 at *6. Based on the evidence
of Coats moving his car far closer to the Heritage Center on his way back to the
gunfight, *see* Exh. 96 at 20:31:35–21:32:52, Exh. 55, a rational jury could also
infer that Coats was intending an armed confrontation with Simmons at this point
and was planning his getaway. The evidence further showed Coats making a

9

deliberate advance towards Simmons, hiding in an alcove just before the shooting, then aiming and firing multiple shots at Simmons before fleeing the scene. *See* Exhs. 50, 54, D-102. Such evidence, taken together, supported the rational inference that Coats' actions were a deliberate response to the disrespect shown by Simmons toward himself and his fellow Mac Block members, and thus motivated by a VICAR purpose.

In sum, the panel was correct to conclude the evidence sufficient to support Coats's VICAR purpose. Coats fails to identify any point of law or fact that the panel overlooked or misapprehended in rejecting his evidentiary sufficiency claim.

## C. The panel decision does not conflict with the other circuit decisions cited by Coats

According to Coats, rehearing is warranted because the panel's decision conflicts with three decisions of other circuit courts: *United States v. Garcia*, 74 F.4th 1073 (10th Cir. 2023); *United States v. Ledbetter*, 929 F.3d 338 (6th Cir. 2019); and *United States v. Thai*, 29 F.3d 785 (2d Cir. 1994). PFR-10–13. Not true. As an initial matter, these cases and the same arguments were previously raised in Coats's opening brief, *see* COB-31–36, addressed in the government's response brief, *see* AAB -22–23, mentioned in Coats's reply brief, *see* ARB-4, and implicitly considered and rejected by the panel in reaching its decision on the evidentiary sufficiency claim. Coats's reiteration of the same cases and arguments does not provide a basis for rehearing.

Coats also argues that, like *Garcia*, *Ledbetter*, and *Thai*, the government failed to prove his VICAR purpose because there was "no direct evidence of Coat's subjective motivation," or "evidence that Simmons was a rival gang member." PFR-14. His arguments are misguided. Sufficient evidence of VICAR motive does not require "direct evidence" of "subjective motivation"; indeed, motive and intent are, more often than not, adequately proven by circumstantial evidence and the reasonable inferences such evidence supports. *See United States v. Harris*, 792 F.2d 866, 868 (9th Cir. 1986) ("All reasonable inferences must be drawn in favor of the government, and circumstantial evidence is sufficient to sustain a conviction."). The purported lack of evidence regarding Simmons's rival gang member status is also a red herring. The government's theory, as presented and proven at trial, was that Simmons was an outsider who publicly disrespected Coats and his fellow gang members in Mac Block territory, and that Mac Block expected its members to defend each other and respond to such disrespect with violence. It was reasonable for the jury to find from the evidence that Coats's decision to retrieve a firearm and join Harrison and Manning in the shootout against Simmons was motivated, at least in substantial part, by Mac Block's expectations regarding defending fellow gang members and enforcing respect.

As pointed out in the government's answering brief:

> Unlike the extra-circuit cases on which Coats's relies,
> COB-31–35, this was not a case in which the only

11

evidence of enterprise purpose was Coats's enterprise affiliation. The jury had much more here from which it could readily infer from that Coats's immediate and deliberate response to Simmons' disrespect accorded with Mac Block expectations because he was indeed motivated by such expectations.

AAB-22. In any event, a closer look at these three extra-circuit cases confirm why they are indeed distinguishable and do not help Coats's evidentiary sufficiency claim or his petition for rehearing.

### 1. *Garcia*

In *Garcia*, the victim of the VICAR murder in question was "a small-scale heroin dealer" named Adrian Burns whose "regular customers included brothers [and codefendants] Andrew Gallegos and Joe Gallegos," who also happened to be members of the Syndicato de Nuevo Mexico ("SNM") gang. 74 F.4th at 1113. Burns, as the Gallegos brothers' personal drug dealer, sold them heroin "on a daily basis—sometimes multiple times a day and usually in $20 quantities" and "would occasionally front [them] money for [the] drugs." *Id.* at 1120. Two days before the murder, Burns told another customer to tell Joe "if he doesn't have my money to stop being a bitch and give me a call." *Id.* However, no evidence at trial showed that "the Gallegos brothers ever received [] Burns's message, let alone found it disrespectful." *Id.* "On the evening of the murder," Burns "told his girlfriend he was meeting the Gallegos brothers for a drug deal," "left in his girlfriend's car," and "was not seen alive again." *Id.* at 1113. Burns was later

discovered "in a remote, wooded area," where he had apparently been "beaten, handcuffed, and shot in the head before his lifeless body was doused in gasoline and set on fire, along with the car he had been driving." *Id*.

Although the Gallegos brothers were prime suspects for the murder, "the State of New Mexico did not prosecute them." *Id.* The incident, however, later became the basis for two VICAR counts against the Gallegos brothers, which were filed amongst the many other RICO and VICAR charges against multiple SNM members in *Garcia*. While the Tenth Circuit affirmed the majority of the convictions in *Garcia* (including another VICAR murder conviction for Joe), it vacated the VICAR convictions based on the murder of Burns, finding insufficient evidence "connecting the alleged conspiracy and murder with either defendant's status in SNM." *Id*. at 1113. As the *Garcia* court pointed out, the only evidence at trial showing any SNM connection was testimony that Joe and Andrew Gallegos were members of SNM, and that SNM had a "culture of demanding culture of demanding respect, violently retaliating for disrespect, looking down on those who failed to retaliate for disrespect, and using violence to maintain or enhance status in the gang." *Id*.

*Garcia* is clearly distinguishable on its facts. *Contra* PFR-11–12. Unlike Coats's shooting and murder of Simmons, the murder of Burns was one committed in private, for which the Gallegos never publicly took credit or revealed to their

fellow SNM members (except for Andrew's jailhouse confession to a fellow SNM inmate years later). As the Tenth Circuit pointed out, "Taking a victim's car and body to a remote wooded area, dousing them in gasoline, and burning them is consistent with an attempt to destroy evidence, not a bid for publicity," and "even if the burning of the car and body could be seen as an attempt to draw attention, nothing about the scene would signify SNM involvement or even point to the Gallegos brothers." *Garcia*, 74 F.4th at 1120. The circumstances of this murder did not support—and even contradicted—the inference that the Gallegos brothers killed Burns to maintain or promote their status in SNM. Furthermore, "nothing about the manner of this murder suggested a gang connection": There was "[n]o SNM insignia or other gang identifiers marked the crime scene," nor was the crime "characteristic of an SNM 'hit'"—such as, the murder of "a rival gang member or SNM snitch," or an "early-morning in-prison strangulation or a knifing in the prison yard in view of the 'homies.'" *Id*.

The contrast from *Garcia* is stark here: unlike the private murder of Burns, Coats participated in a public shooting of an individual who had overtly disrespected his fellow Mac Block members on Mac Block territory. Furthermore, the crime committed by Coats was entirely consistent with Mac Block's expectation of responding to public disrespect and protecting Mac Block territory with violence, as shown by the trial evidence.

2.    *Ledbetter*

*Ledbetter* is no better for Coats.  *Contra* PFR-13.  There, the Sixth Circuit

vacated a VICAR murder conviction of Deounte Ussury, a member of the Short

North Posse (SNP) gang, based on his shooting of a drug customer ("Hill") during

what appeared to be a personal drug deal "gone bad."  *Ledbetter*, 929 F.3d at 356.

The deal had been originally set up by Ussury's personal "drug dealer and friend"

("Broomfield"), who had asked Ussury to "drive over to Broomfield's house to sell

marijuana to Hill, a regular buyer of Broomfield's."  *Id*.  There was no evidence

that any SNP members knew about the drug deal or the murder until after it

occurred, when "Ussury apparently drove to one of the houses frequented by Short

North Posse members," "told the group how he had tried to rob Hill at

Broomfield's house but ended up shooting him after Hill reached for his gun," and

"asked the group for help getting rid of the gun."  *Id*. at 356.  There was also "no

evidence that Ussury intended to split whatever he got from Hill with others in the

Short North Posse," nor "any evidence that he robbed (and killed) Hill in the

course of his Short North Posse work" as "this was not the sort of robbery that the

Short North Posse regularly conducted as part of its affairs."  *Id*. at 357.

The *Ledbetter* court found the evidence insufficient to show "that Ussury

murdered Hill either for pecuniary gain from the Short North Posse or to boost his

position within the gang," noting: "Whether Ussury planned to murder Hill from

the start or resorted to murder only after the drug deal had gone bad, Ussury acted alone and without any apparent benefit to the Short North Posse. This was the work of a single person, who happened to be in a gang." *Id*. at 356. As the court observed, the murder was committed "without assistance or direction from any of Ussury's fellow members, and targeted a smalltime drug user rather than a competing drug dealer, deep pocket, or rival gang." *Id*. at 357. "If anything, robbing and killing a smalltime buyer needlessly risked exposing the enterprise for an inconsequential amount of money." *Id*. Accordingly, the court found that "Ussury's one-off robbery and murder of Hill did not contribute to the purpose of the group and thus is not attributable to the enterprise." *Id*.

Here, the murder committed by Coats was far from "the work of a single person, who happened to be in a gang." *Id*. Rather, the evidence showed that the murder was carried out by Coats and his fellow gang members for a gang purpose: to enforce and retaliate against the disrespect that an outsider exhibited towards the gang in gang territory. *Ledbetter* is clearly distinguishable and does not provide any basis for rehearing.

### 3. *Thai*

*Thai* also does not support Coats's petition for rehearing. *Contra* PFR-13. In *Thai*, the Second Circuit reversed a conviction for VICAR conspiracy to commit assault with a dangerous weapon, which stemmed from the plan and order of

David Thai, the leader of the Born to Kill (BTK) gang, to his subordinate to bomb a restaurant and arrange for a new gang member to do it. 29 F.3d at 817. The only evidence of Thai's motive for ordering the bombing was the subordinate's testimony that "somebody" (unknown) had offered Thai a "big amount of money" ("over $10,000") "to do it." *Id*. at 88. Based on this, the *Thai* court found that there was "no evidence from which the jury could conclude that Thai's motive for wanting to bomb the Pho Bang was other than purely mercenary." *Id*. at 818. As the court pointed out: "There was no evidence, for example, that the bombing was to be a response to any threat to the BTK organization or to Thai's position as BTK's leader," or "that he thought that as a leader he would be expected to bomb the restaurant," nor was there any evidence regarding "Thai's intended use of the money" from the bombing, let alone that the money might be used for gang expenses. *Id*.

Here, there was little to no evidence at trial that Coats's had any "mercenary" or otherwise personal motive for participating in the murder of Simmons. Indeed, the evidence of Coats's VICAR motive was far more robust and direct than in *Thai*, as it included: the uncontroverted evidence of Coats's actions in response to the verbal altercation with Simmons (briefly leaving with Manning and Harrison to retrieve weapons and returning to shoot Simmons), Harrison's testimony as to why they did so (as a response to the disrespect shown by Simmons

to Mac Block members), and evidence from Brown and others as to Mac Block's expectations regarding protecting Mac Block territory and enforcing against disrespect to Mac Block with violence. Based on this, a rational juror could easily infer that Coats's killed Simmons for the purpose of maintaining his status and reputation in Mac Block.

In sum, none of the extra-circuit cases cited by Coats in his petition conflict with the panel's decision or otherwise warrant the relief he seeks.

## CONCLUSION

For the reasons set forth above, this Court should deny Coats's petition for panel rehearing and/or rehearing en banc.

Dated: March 5, 2026                    Respectfully submitted,

                                    CRAIG H. MISSAKIAN
                                    United States Attorney

                                    MERRY JEAN CHAN
                                    Chief, Appellate Section, Criminal Division

                                    */s/ Anne C. Hsieh*
                                    ANNE C. HSIEH
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff-Appellee
                                    UNITED STATES OF AMERICA

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance for Petitions for Rehearing/Responses

**9th Cir. Case Number:(s)** _____ **22-10309, 22-10310** _____

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached Response to the

Petition for Panel Rehearing and/or Rehearing En Banc is:

[X] Prepared in a format, typeface, and type style that complies with Fed. R. App.

P. 32(a)(4)-(6) and complies with the length limit designated by court order

dated 2/12/2026 (Dkt. 87), containing the following number of words: **4,077**.

**Signature**:  s/*Anne C. Hsieh* _____ **Date**: March 5, 2026

19